UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
LUIS CUELLAR,

                  Plaintiff,

      -against-

KINGS JUICE BAR DELI GRILL INC. d/b/a
KINGS DELI GRILL & JUICE BAR, KINGS
FOOD & GRILL CORP. d/b/a KINGS DELI &
GROCERY, DELI HOT FOOD GRILL
GROCERY INC. d/b/a KINGS DELI &
GROCERY, MOHAMED ALI, and GALAL
AHMED,

                 Defendants.
--------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
23 CV 4293 (EK)(RML)

LEVY, United States Magistrate Judge:

        By order dated January 22, 2024, the Honorable Eric R. Komitee, United States

District Judge, referred plaintiff's motion for default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that plaintiff's motion

be granted, and that plaintiff Luis Cuellar be awarded $38,560 in damages, plus pre- and post-

judgment interest, and $10,819.50 in attorney's fees and costs.

## BACKGROUND AND FACTS

        Plaintiff Luis Cuellar ("plaintiff") commenced this wage and hour action on June

12, 2023, against Kings Juice Bar Deli Grill Inc., and other incorrectly sued entities, asserting

claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 301, *et seq.*, and New York

Labor Law ("NYLL") §§ 190, *et seq.*  (See Complaint, dated June 12, 2023 ("Compl."), Dkt.

No. 1.)  An Amended Complaint was filed on July 24, 2023, for the purpose of adding the

correctly identified defendants: Kings Juice Bar Deli Grill Inc. d/b/a Kings Deli Grill & Juice

Bar, Kings Food & Grill Corp. d/b/a Kings Deli & Grocery, and Deli Hot Food Grill Grocery

Inc. d/b/a Kings Deli & Grocery ("corporate defendants"), Galal Ahmed ("individual defendant," or together with the corporate defendants, "defendants"), and Mohamed Ali.[1]  (See First Amended Complaint, dated July 24, 2023 ("Am. Compl."), Dkt. No. 5.)  The Amended Complaint alleges that defendants Ahmed and Ali jointly managed the corporate defendants and supervised the day-to-day operation of the businesses.  (See id. ¶¶ 12, 22-23.)  Plaintiff asserts that defendants employed him as a stock person and porter from approximately January 16, 2022 to May 8, 2023.  (Id. ¶ 17.)

Defendants were properly served with the summons and complaint.  (See Affidavits of Service of Steve Avery, sworn to Aug. 17, 2023, Dkt. Nos. 8, 9, 10; Affidavit of Service of Loai Sarsour, sworn to Aug. 16, 2023, Dkt. No. 11.)  Defendants have failed to answer or otherwise move with respect to the complaint.  Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) as to defendants on October 9, 2023.  (See Request for Certificate of Default, filed Oct. 9, 2023, Dkt. No. 12.)  On October 11, 2023, the Clerk of the Court noted the defaults of defendants.  (See Clerk's Entry of Default, dated Oct. 11, 2023, Dkt. No. 13.)  On January 19, 2024, plaintiff filed the instant motion for default judgment.  (See Motion for Default Judgment, dated Jan. 19, 2024, Dkt. No. 15.)  Judge Komittee referred plaintiff's motion to me on January 22, 2024.

Plaintiff seeks a default judgment on claims under the FLSA and NYLL for defendants' failure to (1) pay him minimum wages and overtime compensation, and (2) maintain records or provide notices.  (See Am. Compl. ¶¶ 1-2; see also Plaintiff's Memorandum of Law in Support of Motion for a Default Judgment, dated Jan. 19, 2024 ("Pl.'s Mem."), Dkt.

---

[1] Plaintiff has been unable to locate and serve defendant Ali and, therefore, plaintiff's motion is not made against this individual.  (Declaration of Justin Cilenti, Esq., dated Jan. 19, 2024 ("Cilenti Decl."), Dkt. No. 16, ¶ 7.)

No. 17, at 5-6.)  Plaintiff requests an award of compensatory damages, liquidated and statutory

damages, pre-judgment interest, and attorney's fees and costs.  (See Pl.'s Mem. at 1.)

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for plaintiffs to

obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief

is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a).

Second, after a default has been entered against the defendant and the defendant fails to appear

or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a

default judgment.  FED. R. CIV. P. 55(b)(2).  To grant a default judgment, the court must ensure

that the plaintiff took all the required steps in moving for default judgment, including providing

proper notice to defendants of the lawsuit.  Here, as explained above, plaintiff has demonstrated

that he properly served the defendants (excluding defendant Ali) with the summons and

complaint.  Plaintiff has also demonstrated that he served the Motion for Default Judgment and

accompanying submissions on defendants in compliance with Local Rule 55.2(c).  (See

Affirmation of Service of Justin Cilenti, Esq., filed Apr. 16, 2024, Dkt. No. 19.)[2]

### A.  Liability

An entry of default alone is insufficient to establish liability, "since a party in

---

[2] On March 29, 2024, I directed plaintiff to file proof of service of the Motion for Default
Judgment and accompanying submissions.  (See Order, dated Mar. 29, 2024.)  On April 16,
2024, plaintiff filed a letter stating that, although plaintiff's internal file notes indicated that
service was effectuated by mail on January 23, 2024, plaintiff "inadvertently failed to retain
proof of service or file an affidavit of service with the Court at that time.  Accordingly, in an
abundance of caution to ensure compliance with the Court's Local Rules, our office re-served
the defaulting defendants at their last known business addresses on April 11, 2024."  (See
Affirmation of Service of Justin Cilenti, Esq., filed Apr. 16, 2024, Dkt. No. 19.)

default does not admit mere conclusions of law."  Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted).  A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [plaintiffs'] allegations establish [defendants'] liability as a matter of law." Id.

Plaintiff has sufficiently pleaded factual allegations that give rise to liability for unpaid minimum and overtime wages under the FLSA and NYLL.  The extent to which plaintiff can recover damages for these violations initially depends on whether: (1) his claims were timely; (2) he is a covered employee under the FLSA and the NYLL; and (3) defendants were plaintiff's employers under the FLSA and NYLL.

1.  Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior. 29 U.S.C. § 255(a).  Here, the complaint, which was filed on June 12, 2023, alleges willful violations of the FLSA.  (See Compl. ¶¶ 16-17.)  Therefore, the FLSA's three-year statute of limitations applies.  Because plaintiff alleges that he was not properly paid wages from approximately January 16, 2022 to May 8, 2023, I find that the claims are timely under the FLSA.  Regardless of willfulness, plaintiff's claims must arise within six years prior to the

4

filing of the complaint to be timely under the NYLL.  See N.Y. Lab. L. §§ 198(3), 663(3).

Thus, plaintiff's claims are also timely under the NYLL.

> 2.  Employee Coverage

Since the provisions of the FLSA and NYLL apply only to employees of covered

employers, a plaintiff in a wage and hour action must show that he or she was defendants'

employee, and that defendants were employers subject to the coverage of each statute.  For

purposes of the FLSA, an employee is "any individual employed by an employer," meaning any

individual whom an employer "suffer[s] or permit[s] to work."  29 U.S.C. §§ 203(e)(1); (g).

Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work

for a covered employer.  An employer is defined as "any person acting directly or indirectly in

the interest of an employer in relation to an employee."[3]  29 U.S.C. § 203(d).  "Person" is

defined as "an individual, partnership, association, corporation, business trust, legal

representative, or any organized group of persons."  Id. § 203(a).

"Employers are subject to FLSA when their employees are either engaged in

commerce or in the production of goods for commerce ('individual coverage') or employed in an

enterprise engaged in commerce or in the production of goods for commerce ('enterprise

coverage')."  Reyes v. Tacos El Gallo Giro Corp., No. 20 CV 3474, 2022 WL 940504, at *3

(E.D.N.Y. Jan. 25, 2022), report and recommendation adopted, 2022 WL 939769 (E.D.N.Y.

Mar. 29, 2022) (citing 29 U.S.C. §§ 206(a), 207(a)(1)) (quotation marks and citations omitted)).

"[T]o properly allege individual or enterprise coverage, [plaintiffs] need not do much.  Aside

---

[3] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).

from stating the nature of [their] work and the nature of [their employer's] business, plaintiffs must provide only straightforward allegations connecting that work to interstate commerce." Id. (citations and quotation marks omitted).

Plaintiff has adequately pleaded that he was an employee to whom no statutory exemption applies, insofar as he alleges that he was hired as a stock person and porter and worked for defendants from approximately January 2022 to May 2023.  (See Am. Compl. ¶¶ 27-30.)  Plaintiff alleges that the corporate defendants engaged in commerce within the meaning of the FLSA in that (1) their employees engaged in commerce or in the production of goods for commerce, or handled, sold, or otherwise worked with goods or materials that have moved through or were produced for commerce, and (2) each had an annual gross volume of sales of not less than $500,000.  (See id. ¶¶ 14-16.)  Although plaintiff does not further specify the nature of the activities related to interstate commerce, the allegations are sufficient for the purposes of the FLSA because it is likely that the operation of the delicatessen, grocery, and juice bar would have required materials that were moved or produced in interstate commerce.  See Baizan Guerrero v. 79th St. Gourmet & Deli Inc., No. 18 CV 04761, 2019 WL 4889591, at *5 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (quoting Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("[I]t is reasonable to infer that the operation of a New York deli with over $500,000.00 in annual sales 'requires a wide variety of materials. . . .' and it is 'reasonable to infer that some of these materials moved or were produced in interstate commerce.'")).

"On a motion for default judgment, such conclusory allegations may suffice to establish enterprise coverage where it may be inferred from the type of business enterprise that it was engaged in interstate commerce."  Reyes-Fana v. Moca Grocery NY Corp., No. 21 CV

4493, 2022 WL 5428688 (E.D.N.Y. Aug. 16, 2022), report and recommendation adopted, 2022 WL 4094241 (E.D.N.Y. Sept. 7, 2022) (quotations and citation omitted). Accordingly, I find that plaintiff has established that he was a covered employee under the FLSA and the NYLL.

### 3. Employer Status of Corporate and Individual Defendants

Plaintiff seeks to hold four defendants—three corporate and one individual— liable for unpaid wages. (See Pl.'s Mem. at 2-3.) To establish the corporate defendants' liability under the FLSA and NYLL, plaintiff must allege that the defendants were an "enterprise engaged in commerce or in the production of goods for commerce" within the applicable statutory definition. 29 U.S.C. § 203(s)(1). As discussed above, plaintiff has sufficiently established that the corporate defendants were engaged in commerce. (See Am. Compl. ¶¶ 14-16.)

To hold the individual defendant liable under the FLSA and NYLL, plaintiff must allege that the individual defendant was his "employer" within the broad meaning of 29 U.S.C. § 203(d). See Fermin, 93 F. Supp. 3d at 35-37. The Second Circuit has set forth a series of non-exclusive factors for evaluating the "economic reality" of a given relationship to determine whether an employment relationship exists. See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984). These factors include whether the alleged employer: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. Id.; see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). Here, plaintiff alleges that the individual defendant exercised control over the terms and conditions of his employees' employment by having the power to, and in fact, hiring and firing employees, assigning and/or transferring employees to work between the businesses, supervising and

instructing the employees how to perform their jobs, determining and approving work schedules, determining and approving rates and methods of employee pay, and creating and maintaining employment records.  (See Am. Compl. ¶¶ 13, 22-23.)  Thus, plaintiff has alleged that the individual defendant exercised sufficient control over plaintiff to find that the individual defendant was plaintiff's employer.

Further, plaintiff has adequately pleaded that the individual defendant employed plaintiff jointly with the corporate defendants.  Plaintiff alleges that the individual defendant is an officer, shareholder, director, manager, supervisor, and/or proprietor of the corporate defendants and that the corporate defendants each engaged in related activities, shared plaintiff and other similarly situated employees, acted in the interest of each other, paid their employees by the same plan or scheme, and were under common control.  (See id. ¶¶ 12, 24-26.)  These allegations are sufficient to conclude that defendants jointly employed plaintiff.  See, e.g., Baizan Guerrero, 2019 WL 4889591, at *5; Peralta v. M & O Iron Works, Inc., No. 12 CV 3179, 2014 WL 988835, at *5 (E.D.N.Y. Mar. 12, 2014) (finding defendants constituted joint employers where they shared similar control over plaintiff's employment conditions).  Accordingly, plaintiff has established the liability of the corporate defendants as well as the individual defendant under the FLSA and NYLL.

### B.  Damages

Once the court determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical

computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "The burden is on the plaintiff to establish [his or her] entitlement to recovery." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009). Plaintiff requests damages for unpaid minimum and overtime wages, liquidated damages, and wage notice and statement violations, totaling $38,560. (See Pl.'s Mem. at 19; see also Declaration of Justin Cilenti, Esq., dated Jan. 19, 2024 ("Cilenti Decl."), Dkt. No. 16, ¶¶ 13-14.) Plaintiff also requests pre-judgment interest. (See Pl.'s Mem. at 13-15, 19; Cilenti Decl. ¶¶ 15-24.) I will address each in turn.

       1. Unpaid Wages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'" Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart v. Rick's Cabaret Int'l. Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

Here, because defendants have defaulted and no employment records have been produced, the court will presume the accuracy of plaintiff's recollection and estimates of hours

worked.  Plaintiff asserts that he worked six days a week from 8:00 a.m. to 6:00 p.m.,

amounting to sixty hours per week.  (Am. Compl. ¶¶ 31-34; Pl.'s Mem. at 4.)


   a.  _Minimum Wage_

      Under both the FLSA and the NYLL, employees must be paid at least the

minimum hourly wage for each hour that they work.  29 U.S.C. § 206; N.Y. LAB. L. § 652.  At

all times relevant to this action, the FLSA required defendants to pay plaintiff a minimum

hourly wage of $7.25.  29 U.S.C. § 206(a)(1).  However, New York law obligated defendants to

pay plaintiff a minimum hourly wage of $15.00.  N.Y. LAB. L. § 652(1)(a).  Because New

York's minimum wage is higher than the federal minimum wage, plaintiff may recover those

amounts.  29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.

      Plaintiff alleges that he was paid $14.00 an hour for all hours worked, throughout

the entirety of his employment.  (Pl.'s Mem. at 4; Am. Compl. ¶ 34.)  Therefore, plaintiff was

paid below minimum wage.  Plaintiff's damages calculation table indicates that in 2022 and

2023, plaintiff worked forty-nine and nineteen six-day workweeks, respectively.  (See Damages

Table, attached as Ex. 6 to the Cilenti Decl., dated Jan. 19, 2024 ("Damages Table"), Dkt. No.

16-6.)

| Unpaid Minimum Wage Calculations | | | | | | | |
|---|---|---|---|---|---|---|---|
| Year | Days Per Workweek | Weeks | Hours | Pay Rate | Required Minimum Wages | Minimum Wage Owed | Unpaid Minimum Wages Owed |
| 2022 | 6 | 49 | 40 | $14.00 | $15.00 | $1.00 | $1,960.00 |
| 2023 | 6 | 19 | 40 | $14.00 | $15.00 | $1.00 | $760.00 |
| | | | | | | **TOTAL:** | $2,720.00 |

As reflected in the above chart, to calculate the damages that plaintiff incurred because of defendants' failure to pay New York's minimum wage, the difference between the applicable minimum wage and his pay rate is multiplied by forty—the number of hours for which he should have been paid minimum wage. See Xin Long Lin v. New Fresca Tortillas, Inc., No. 18 CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), report and recommendation adopted, 2019 WL 3714600 (E.D.N.Y. May 28, 2019). That number is then multiplied by the number of weeks plaintiff worked during the time periods at issue to determine the total amount of minimum wages owed to plaintiff. Based on the calculations in the above table, I respectfully recommend that plaintiff be awarded a total of $2,720 in unpaid minimum wages.

b. *Overtime Compensation*

Plaintiff alleges that defendants willfully violated the FLSA and NYLL by failing to pay him overtime wages. (See Am. Compl. ¶¶ 19-20, 36-37, 49, 53, 57-58.) Plaintiff is entitled to overtime compensation under the FLSA and NYLL at the rate of one and one-half times his regular rate of pay for the hours he worked in excess of forty during a workweek. See 29 U.S.C. § 207(a)(1); N.Y.C.R.R. tit. 12, § 142-2.2. "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed.'" Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)). The method for calculating overtime is the same under both statutes, but a plaintiff may not receive double damages. See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017). Because plaintiff's recovery will be greater under the NYLL, damages will be calculated based on his NYLL unpaid wages

claim.

Plaintiff alleges that he worked sixty hours per week and that defendants paid him $14.00 an hour for all hours worked, including those over forty, never paying him a premium overtime rate.  (See Am. Compl. ¶¶ 31-34.)  "When a plaintiff is compensated below the statutory minimum wage under the NYLL, the overtime premium is calculated based on the applicable minimum wage, not plaintiff's actual pay rate."  Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc., No. 21 CV 2015, 2024 WL 924534, at *11 (E.D.N.Y. Mar. 4, 2024), report and recommendation adopted as modified sub nom., 2024 WL 1342739 (E.D.N.Y. Mar. 29, 2024).  Here, plaintiff is entitled to unpaid overtime at the rate of one and one-half times the statutory minimum wage, or $22.50 per hour for those hours over forty. Therefore, he is owed $8.50 for every hour of overtime worked, the difference between the $14.00 rate he was paid and the required rate of $22.50.  From January 16, 2022 to May 8, 2023, plaintiff alleges that he worked 60 hours per week, or 20 hours of overtime per week. (See Am. Compl. ¶ 34.)  To calculate the total overtime compensation owed, the hourly overtime owed is multiplied by the weekly overtime hours and the number of weeks.  Based on the calculations in the below table, I respectfully recommend that plaintiff be awarded $11,560 in unpaid overtime wages.

| Unpaid Overtime Wage Calculations | | | | | | | |
|---|---|---|---|---|---|---|---|
| Year | Weeks | Weekly Overtime Hours | Minimum Wage | 150% of Minimum Wage | Regular Rate of Pay | Hourly Overtime Owed | Unpaid Overtime Wages Owed |
| 2022 | 49 | 20 | $15.00 | $22.50 | $14.00 | $8.50 | $8,330.00 |
| 2023 | 19 | 20 | $15.00 | $22.50 | $14.00 | $8.50 | $3,230.00 |
| | | | | | | **TOTAL:** | $11,560.00 |

2.  Liquidated Damages

Plaintiff additionally requests liquidated damages for his unpaid minimum and overtime wages.  (See Pl.'s Mem. at 12-13.); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under both the FLSA and NYLL for the same time period, but that the standard for awarding such damages under both statutes is the same).  The NYLL allows plaintiffs to recover liquidated damages in the amount of 100 percent of minimum wages and overtime wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. LAB. L. §§ 198(1-a), 663; see also Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012).  Here, defendants have not answered or otherwise appeared in this action, much less demonstrated a "good faith" basis for believing the underpayment of wages was lawful.  I accordingly recommend that plaintiff be awarded $14,280 in liquidated damages, which is the amount equal to his unpaid minimum wages and overtime compensation.

3.  Statutory Damages

Plaintiff seeks $10,000 in statutory damages for defendants' failure to provide wage notices or wage statements as required by NYLL §§ 195(1) and 195(3).  (Pl.'s Mem. at 12-13.)  New York's Wage Theft Prevention Act ("WTPA") requires employers to give each employee a "written wage notice within 10 business days of his first day of employment," containing the rate of pay, allowances, and other information relating to the employee's pay, including information about the employer.  Ortiz v. BK Venture Grp. Ltd., No. 21 CV 3766, 2024 WL 1308410, at *3 (E.D.N.Y. Mar. 27, 2024) (quotations and citation omitted).  Section 195(3) requires employers to give employees "wage statements" with every payment of wages, "which must contain, among other things, the dates of work covered by the statement, the rate of

pay, and gross and net wages paid."  Id.  Plaintiff asserts that he was paid in cash and never received a wage notice or weekly wage statement from defendants.  (See Am. Compl. ¶¶ 33-35; Pl.'s Mem. at 4-6.)

    The Supreme Court recently held that a technical violation triggering a statutory damages award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).  Consequently, some courts in this Circuit have "found allegations of technical violations of New York Labor Law's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing."  Beh v. Cmty. Care Companions Inc., No. 19 CV 1417, 2022 WL 5039391, at *7 (W.D.N.Y. Sept. 29, 2022); see also Yunganaula, 2024 WL 924534 (finding that plaintiff lacked standing because he does not allege that the violations resulted in an injury greater than the  minimum wage, overtime, and spread-of-hours wage violations); Guthrie v. Rainbow Fencing Inc., No. 21 CV 5929, 2023 WL 2206568, at *5 (E.D.N.Y. Feb. 24, 2023) (finding that plaintiff lacked standing because "Plaintiff has not provided any factual allegations relative to his standing or actual injuries suffered as a result of the alleged NYLL wage notice and wage statement violations.");  Lopez v. Martha's Cocina Mexicana, LLC, No. 23 CV 2053, 2023 WL 9603828 at *9 (E.D.N.Y. Dec. 27, 2023) (finding that plaintiff lacked standing because "although Plaintiff alleges that Defendants failed to provide him with required wage notices and wage statements, he has not articulated any cognizable actual injury resulting from this failure."). These cases rely primarily on the Second Circuit's reasoning in Maddox v. Bank of New York Mellon Tr. Co., N.A., where the court found that the plaintiffs had failed to allege a concrete harm arising out of the defendant's failure to timely present a certificate of discharge to the county clerk, a purely technical violation.  19 F.4th 58, 64-66 (2d Cir. 2021).

Nevertheless, other courts in this Circuit have continued to grant damages for wage notice and statement violations. <u>See, e.g.</u>, <u>Ortiz</u>, 2024 WL 1308410; <u>Erdemir v. Allstate Marble & Granite, Kitchens & Baths Inc.</u>, No. 18 CV 06103, 2023 WL 8270891 (E.D.N.Y. Nov. 30, 2023); <u>Metcalf v. TransPerfect Translations Int'l, Inc.</u>, No. 19 CV 10104, 2023 WL 2674743 (S.D.N.Y. Mar. 29, 2023); <u>Black v. 7714 Ent., Corp.</u>, No. 21 CV 4829, 2022 WL 3643969 (E.D.N.Y. Aug. 24, 2022); <u>Brito v. Marina's Bakery Corp.</u>, No. 19 CV 828, 2022 WL 875099 (E.D.N.Y. Mar. 24, 2022).

One such court recently found that claims brought under the WTPA for wage statement and notice violations do not require plaintiffs to show "the downstream impact on the plaintiff of the non-provision of the required notice." <u>Bueno v. Buzinover</u>, No. 22 CV 2216, 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023). In so finding, the court in <u>Bueno</u> emphasized that the concrete harm necessary for Article III standing is captured in the legislative purpose of the WTPA, which provides not only an avenue for employees to recover wages owed them by their employer but also a means to empower them—namely, through the provision of written notices with respect to employers' legal obligations—to advocate for themselves. <u>Bueno</u>, 2023 WL 2387113, at *3.

It is critical to note that the factual circumstances arising out of cases like <u>TransUnion</u> and <u>Maddox</u> versus those arising in cases under the WTPA are fundamentally distinct. In <u>TransUnion</u>, the entire class of plaintiffs had alleged that TransUnion had violated its obligations under the Fair Credit Reporting Act ("FCRA") by maintaining credit files for those plaintiffs that contained misleading OFAC alerts. <u>TransUnion</u>, 141 S. Ct. at 2208-09. However, only 1,853 of the class members had actually suffered the reputational harm of having those misleading OFAC alerts disseminated to third-party businesses, *i.e.*, the harm FCRA sought to

prevent via the disputed provisions.  Id.  As such, those 1,853 class members were deemed to

have standing, whereas the remainder of the class—whose misleading credit files had not been

disseminated—was deemed not to have standing for failure to allege either actual or imminent

harm.  Id. at 2209.  Similarly, in Maddox, the plaintiffs alleged violations of New York's

mortgage-satisfaction-recording statutes and had rooted their standing to sue in "impaired access

to accurate financial information," "a false impression adverse to their credit status," and "the

right to be free of these harms [as] recognized by the state legislature."  Maddox, 19 F.4th at 61,

64-66.  However, the Second Circuit found that the plaintiffs lacked standing because they had

failed to plead sufficient facts to show that any of the risks of harm—namely, risk of (1) having

"an actionable cloud on title to the property securing the discharged mortgage debt," (2)

reputational harm; and (3) difficulty obtaining financing if they so pleased—alleged by the

plaintiffs, had or would likely come to fruition.  Id. at 64-66.

       The wage notice and statement violations alleged here are of a different class of

harm than those alleged in TransUnion and Maddox.  The WTPA was enacted to "protect an

employee's concrete interest in being paid what he or she is owed under the NYLL."  Bueno,

2023 WL 2387113, at *3 (quoting Imbarrato v. Banta Mgmt. Servs., Inc., No. 18 CV 5422, 2020

WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)).  Specifically, the WTPA's wage notice and wage

statement provisions are intended to serve as safeguards of employees' broader interest in being

paid the wage they are owed.  Bueno, 2023 WL 2387113, at *3.

       Here, although plaintiff's wage notice and statement claims allege only the bare

assertion that he never received the statutorily required wage notice and statements, the

realization of the downstream harm the statute seeks to prevent—wage theft—is evident on the

face of the pleadings.  Had the sole allegation been one of failure to furnish statutorily mandated

notices and statements absent the companion allegation of wage theft, plaintiff may have encountered an issue of standing.  But this is not the case.  Plaintiff alleges a practice of failing to pay proper wages over a period of approximately sixteen months, a pattern that was undoubtedly buttressed by defendants' failure to comply with the wage notice and statement provisions of the WTPA, which were designed to prevent this precise form of wage theft by informing employees of their pay rates and deductions.  Therefore, I find that the plaintiff has Article III standing to raise these statutory violations.

The penalty for failing to provide a wage notice is $50 per day, up to $5,000.  N.Y. Lab. L. § 198(1-b).  The penalty for failing to provide wage statements is $250 per day, up to $5000.  Id. § 198 (1-d).  Plaintiff worked for defendants for a total of sixty-eight six-day workweeks, totaling 408 days.  (See Damages Table.)  Thus, I respectfully recommend that he be awarded $10,000 on these claims, representing $5,000 for wage notice violations and $5,000 for wage statement violations.

### 4. Pre-judgment Interest

Finally, plaintiff requests pre-judgment interest.[4]  (Pl.'s Mem. at 13-15.)  The calculation of pre-judgment interest is based on unpaid wages, but not on liquidated or statutory damages.  Diaz v. Rene French Cleaners, Inc., No. 20 CV 3848, 2022 WL 4646866, at *11 (E.D.N.Y. Aug. 29, 2022), report and recommendation adopted, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022).  The rate of interest is calculated at nine percent per annum, and, where damages were incurred at various times, may be calculated from a single reasonable intermediate date.  N.Y. C.P.L.R. §§ 5004, 5001(b).  The midpoint of a plaintiff's employment is a reasonable

---

[4] Plaintiff did not include a request for post-judgment interest in the motion for default but did so in the complaint.  (See Compl. ¶ 2; Am. Compl. ¶ 2.)  Because post-judgment interest is mandatory, plaintiff is also entitled to post-judgment interest.

intermediate date for purposes of calculating pre-judgment interest.  See Fermin, 93 F. Supp. 3d at 49; Diaz, 2022 WL 4646866, at *11.  I have determined that the midpoint of plaintiff's employment was September 11, 2022.  (See damages table; Prejudgment Interest table, dated Jan. 19, 2024, Dkt. No. 16-7.)  Accordingly, I respectfully recommend that pre-judgment interest be awarded on plaintiff's total unpaid wages of $14,280 from September 11, 2022 to the date of this court's judgment at a per diem interest rate of $4.00 ($14,280.00 x 0.09/365).

Additionally, I respectfully recommend that plaintiff be awarded post-judgment interest under 28 U.S.C. § 1961.  Post-judgment interest under Section 1961 is mandatory.  See Fermin, 93 F. Supp 3d at 53.  Section 1961 provides that interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  28 U.S.C. § 1961(a).

### C. Attorney's Fees and Costs

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL.  See 29 U.S.C. § 216(b), N.Y. Lab. L. §§ 198, 663(1).  Plaintiff seeks an award of $9,890 in attorney's fees, and $929.50 in costs.  (See Pl.'s Mem. at 19; Attorney's Fees and Costs, dated Jan. 19, 2024, Dkt. No. 16-8.)  Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and

contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam).  Plaintiff has satisfied this requirement.  (See Attorney's Fees and Costs.)  The court next assesses whether plaintiff's counsel requests a reasonable hourly rate. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  Cruz v. Loc. Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted).  A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case."  Arbor Hill, 522 F.3d at 184 n.2; see Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

Plaintiff's counsel requests an hourly rate of $400 for Justin Cilenti and $100 for Marcela Cardoso.  (See Attorney's Fees and Costs.)  Mr. Cilenti, of Cilenti & Cooper, PLLC, was admitted to practice in 1997 and has over 26 years of experience in civil litigation, personally handling over 500 wage and hour cases.  (See Cilenti Decl. ¶¶ 26-27.)  Ms. Cardoso is the firm's paralegal.  (See id. ¶ 27.)  $400 per hour for Mr. Clienti and $100 per hour for Ms. Cardoso are reasonable rates.  See Diaz, 2022 WL 4646866, at *13 ("Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases.") (quotations and citation omitted).

The court next looks to the reasonableness of the number of hours billed.  To

determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday, 42 F.3d, at 134). The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).

Here, plaintiff's counsel seeks compensation for 27.2 hours of work. (See Cilenti Decl. ¶ 27; see also Attorney's Fees and Costs.) Having reviewed the submitted time records, I find the claimed number of hours reasonable. See, e.g., Zhang v. Asian Moon Rest. Corp., No. 20 CV 2776, 2022 WL 1422576, at *9 (E.D.N.Y. Mar. 15, 2022) (finding 44.8 hours to be within the reasonable range for a single-plaintiff FLSA default case), report and recommendation adopted, 2022 WL 1460275 (E.D.N.Y. May 9, 2022); Ahn v. Sun Cleaners Inc., No. 19 CV 5919, 2022 WL 586022, at *12 (E.D.N.Y. Feb. 18, 2022) (finding thirty-five hours to be a reasonable number billed in a single-plaintiff FLSA default case); Du v. CGS Metal Fabrication Inc., No. 19 CV 1821, 2022 WL 987316, at *13 (E.D.N.Y. Jan. 14, 2022) (finding 31.1 hours reasonable in a single-plaintiff FLSA default case). Accordingly, I respectfully recommend that plaintiff be awarded $9,890 in attorney's fees.

Plaintiff additionally requests compensation for $929.50 in costs, representing $402 for this court's filing fee and $527.50 in service of process fees. (See Cilenti Decl. ¶ 29; see also Attorney's Fees and Costs.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation

omitted), <u>report and recommendation adopted,</u> 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018);

<u>see also</u> <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 763 (2d Cir. 1998). Plaintiff has

submitted sufficient documentation for filing and service of process costs. (<u>See</u> Attorney's Fees

and Costs.) Accordingly, I find $929.50 to be reasonable out-of-pocket expenses.

CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion be

granted and that default judgments be entered against the defendants, jointly and severally.

Regarding damages, I respectfully recommend that plaintiff be awarded damages for the

following claims: $2,720 in unpaid minimum wages, $11,560 in unpaid overtime wages,

$14,280 in liquidated damages, and $10,000 for wage notice and statement violations, totaling

$38,560. I further recommend that pre-judgment interest be awarded on plaintiff's unpaid

wages of $14,280 from September 11, 2022 to the date of this court's judgment at a per diem

interest rate of $4.00. I also recommend that post-judgment interest be awarded to plaintiff in

accordance with 28 U.S.C. § 1961. Finally, I recommend that plaintiff receive $9,890 in

attorney's fees and $929.50 in costs.

Plaintiff is directed to serve copies of this Report and Recommendation on

defendants by regular mail, and to file proof of service with the court within ten days of this

Report and Recommendation. Any objections to this Report and Recommendation must be

filed electronically, with courtesy copies to Judge Komitee, within fourteen days. Failure to file

objections within the specified time waives the right to appeal the district court's order.  See 28

U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_____/s/_____<br>ROBERT M. LEVY<br>United States Magistrate Judge

Dated: Brooklyn, New York
       May 7, 2024